NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| ALFRED PAPPALARDO,<br><br>        Plaintiff,<br><br>   v.<br><br>ADVENT PRODUCT DEVELOPMENT, INC.,<br><br>        Defendant. | Civil Action No. 06-4697 (RMB)<br>[Docket No. 6] |
| VERNON PRIOLEAU,<br><br>        Plaintiff,<br><br>   v.<br><br>ADVENT PRODUCT DEVELOPMENT, INC., et al.,<br><br>        Defendants. | Civil Action No. 06-4698 (RBK)<br>[Docket No. 6]<br><br>**OPINION** |

Appearances:

Norman Elliot Lehrer, Esq.
1205 North Kings Highway
Cherry Hill, NJ
    Attorney for Plaintiffs

David E. Delorenzi, Esq.
Carrie Ann Longstaff, Esq.
Gibbons, P.C.
One Gateway Center
Newark, NJ 07102
    Attorneys for Defendants

**BUMB**, United States District Judge:

**Introduction:**

This matter comes before the Court upon Advent Product Development, Inc.'s, ("Advent" or "Defendant") motions to dismiss or, in the alternative, to transfer the forum of the above-captioned matters. The above-captioned matters present identical issues and were consolidated for all purposes on January 29, 2007. [Docket No. 19 for 06-4697, and No. 14 for 06-4698]. Because the Defendant's motion papers are nearly identical and Plaintiffs have submitted one opposition brief for both motions, this Court will discuss both motions simultaneously.

**Background:**

In their complaints, Vernon Prioleau ("Prioleau") and Alfred Pappalardo ("Pappalardo") (collectively referred to as "Plaintiffs") assert that they individually responded to an advertisement by Advent, an "invention promoter" in 2004. Plaintiffs allege that, as a result of meeting with a representative of Advent and Advent's "statements or representations that they had a track record of success" each chose Advent to promote their invention. (Amended Complaints at ¶ 11).  Both Prioleau and Pappalardo allege that at the meeting with Advent, each was led "to believe that he had a great invention that would make him a great deal of money." (Id. at ¶

12). Each Plaintiff paid $595 for "a Product Profile Report which included a patentability search conducted through the U.S. Patent and Trademark Office records." (Id. at ¶ 13).

Both Plaintiffs received a legal protection report from Richard W. Goldstein, a registered patent attorney, who is not an employee of Advent. Plaintiffs assert that these reports referred to only three related patents "[d]espite the fact that numerous other patents exist that are very similar to [each Plaintiff's]" invention. (Id. at ¶ 14). Prioleau alleges that "Goldstein had knowledge that additional relevant patents existed" but never advised him of that fact or that "a client with a similar invention didn't make any money." (Prioleau's Amend. Compl. at ¶ 15). Despite this, Goldstein recommended that a patent application be filed. Based on this recommendation and "Advent's continuing assurances that the invention would make money, Prioleau was induced by Advent to pay Advent approximately $9,000 to enter a representation agreement." (Id. at ¶ 16).

Pappalardo also alleges that, despite the fact that there were numerous patents similar to his invention, Goldstein recommended that a patent application be filed. As a result of this recommendation and in light of "Advent's continuing assurances that the invention would make money, Pappalardo was induced to pay approximately $9,000 to enter into a representation agreement." (Pappalardo's Amend. Compl. at ¶ 15).

3

Both Plaintiffs state that the Representation Agreement was a "contract for invention promotion services" as set forth in 35 U.S.C. § 297(c)(1) and that Advent failed to disclose information required by 35 U.S.C. 297(a) prior to Plaintiffs' entry into the respective Agreements. Plaintiffs further allege that both Advent and Goldstein hold themselves out as being knowledgeable and experienced in their respective businesses and, as a result, knew or should have known that meaningful patent protection was not available. In essence, Plaintiffs argue that had Advent or Goldstein advised them that there was no meaningful patent protection available, meaning that no company would pay for the inventions, neither Plaintiff would have entered into the Agreement with Advent. As a result, Plaintiffs allege that Advent has violated 35 U.S.C. § 297, the New Jersey Consumer Fraud Act, N.J. Stat. Ann. 56:8-1 et seq., and has committed common law fraud. Of note is the fact that the executed Representation Agreements at issue contain a forum selection clause that states as follows:

> This Agreement shall be governed by and interpreted according to the laws of the State of South Carolina, which Client hereby agrees shall be the appropriate venue for any action, and Client submits to the personal jurisdiction thereof.

**Discussion:**

Advent has brought the instant motions asking this Court to dismiss Plaintiffs' complaints or, alternatively, to transfer

this action to the United States District Court for the District of South Carolina.  This Court will first address the portion of Defendant's motions that ask this Court to transfer this consolidated matter to South Carolina pursuant to the parties' forum selection clause and 28 U.S.C. § 1404(a).

Advent argues that the Plaintiffs have entered into an agreement with Defendant that requires the instant dispute be resolved in South Carolina.  According to Advent, Plaintiffs' claims arise out of their fully executed Representation Agreements ("Agreements") and these Agreements specifically state that "any" disputes arising between the parties were to be resolved in the federal courts of South Carolina.  More specifically, the Agreements clearly state that South Carolina is "the appropriate venue of any action and that [Plaintiff] submits to the personal jurisdiction thereof."  (See Ex. C to Thurlow Decl.).

Because the Agreement contains express, unambiguous contractual language regarding the exclusive forum, Advent argues that this Court, if it is not inclined to dismiss these actions, must transfer these matters to South Carolina.  The forum selection clause, Defendant argues, applies to the instant actions because of its broad language stating that it encompasses "any action."  Moreover, transferring this action will be consistent with the purposes of 28 U.S.C. § 1404(a), which states

5

that a civil action may be transferred "for the convenience of the parties and witnesses, in the interest of justice [to]...any other district...where it might have been brought."

This Court's first task is to determine whether the forum selection clause is valid and enforceable. In the Third Circuit, pursuant to the Supreme Court's instruction, forum selection clauses are "presumptively valid." Reynolds Publishers Inc., v. Graphics Financial Group, 938 F. Supp. 256 (D.N.J. 1996). Moreover, such clauses will generally be enforced unless the objecting party establishes any of the following:

> (1) it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum, or (3) that enforcement would, in the particular circumstances of the case, result in litigation in a jurisdiction so seriously inconvenient as to be unreasonable.

Id. at 263 (citing Costal Steel Corp. v. Tilghman Wheelabrator Ltd., 709 F. 2d 190, 202 (3d Cir. 1983)).

Plaintiffs assert that the forum selection clause was not bargained for, as there was no meeting of the minds, and is unenforceable "legalese" because the Plaintiffs are "working class men," who do not understand its terms. (Pls.' Br. at 10). As such, Plaintiffs assert that the forum selection clause is an unenforceable contract of adhesion and the result of "overreaching."

In order to set aside a forum selection clause based on fraud, Plaintiffs would need to show that "the forum selection

clause is the result of fraud in the inducement of the [forum selection] clause itself." MoneyGram Payment Sys. v. Consorcio Oriental, 65 Fed. Appx. 844, 837 (3d Cir. 2003). While Plaintiffs' complaints make general allegations of fraud, there is no evidence presented that the forum selection clause itself was the result of coercion. Instead, Plaintiffs mainly rely on their arguments that the clause is part of a contract of adhesion and not the product of bargaining.

As an initial matter, "[t]he mere fact that an agreement containing a forum selection clause is a contract of adhesion does not render the clause unenforceable." Mathews v. Rescuecom Corp., 2006 U.S. Dist. LEXIS 8608 at *18 (D.N.J. Feb. 16, 2006). Moreover, Plaintiffs' allegation that the contract is the result of overreaching because of unequal bargaining power is not adequately supported. Plaintiffs' arguments are unsupported by either allegations or evidence that they were not given enough time to review the Agreements or that they attempted to negotiate the terms of the Agreements but were rebuffed. Plaintiffs attempt to invalidate the clause for lack of bargaining on bare allegations alone is inadequate. See Re-Source America, Inc., v. Corning Inc., 2007 U.S. Dist. LEXIS 4676 at *11 (D.N.J. Jan. 19, 2007) (refusing to find that forum clause was product of overreaching where plaintiff did not provide evidence that it attempted to negotiate and was rebuffed); Mathews v. Rescuecom

7

Corp., 2006 U.S. Dist. LEXIS 8608 at *18 (D.N.J. Feb. 16, 2006)(rejecting plaintiff's summary conclusions that agreements were non-negotiable as insufficient to set aside forum selection clause); Park Inn Int'l., v. Mody Enter., Inc., 105 F. Supp. 2d 370, 375 (D.N.J. 2000)("that there may not have been actual negotiations over a forum selection clause does not affect its validity.")(internal citations omitted).

Also, the existence of superior bargaining power will not necessarily invalidate a forum selection clause.  Because Plaintiffs have presented no evidence that Advent took on "an overweening bargaining position" that resulted in a "fraudulently induced forum selection provision" this Court does not find grounds to invalidate the forum selection clause because of uneven bargaining power.  See Bonanno v. Quiznos Master LLC, 2006 U.S. Dist. LEXIS 85131 at *10 (Nov. 17, 2006) (finding that lack of negotiation and unequal bargaining power were insufficient to invalidate forum selection clause where there was no indication that unequal positions resulted in fraudulently obtained clause).

Finally, Plaintiffs argue that they did not understand the clause because they "do not know what the term 'venue' means nor do [they] understand what an 'action' is."  A review of the contractual language reveals, however, that this clause "is not fraught with the kind of legalese that would be incomprehensible to a person without a legal background."  Reynolds Publishers,

8

Inc., 938 F. Supp. at 264.  While Plaintiffs may be unaware of the term "personal jurisdiction" this Court finds it difficult to believe they do not understand what an "action" is or that the clause made clear that such "actions" were to take place in South Carolina.

Alternatively, in their individual affidavits, each Plaintiff contends that despite signing the Agreement, they were not aware that the clause was included because they "were too excited about all the money [they] were going to make." (Pappalardo Decl. at ¶ 13 & Prioleau Decl. at ¶ 14).  This Court is not prepared to excuse Plaintiffs' failure to carefully read the provisions of the Agreement because they were too "excited" to review them; "[a] failure to read a contract will not excuse a party who signs it, nor will the party's ignorance of its obligation."  Park Inn Int'l., v. Mody Enter., Inc., 105 F. Supp. 2d 370, 375 (D.N.J. 2000) (noting that "[t]he enforceability of unread forum selection clauses has frequently been litigated in the context of tickets for passage by ship, usually to the disappointment of the passenger resisting enforcement of the clause").  In light of the foregoing, this Court has concluded that the forum selection clauses at issue are not the result of overreaching and are therefore valid and enforceable.

Even if deemed valid, Plaintiffs contend that the clause is nevertheless, inapplicable to the instant action.  Plaintiffs

9

argue that the clause is inapplicable because it "does not state that any action <u>must</u> be brought in South Carolina" and because it is part of the Representation Agreement and the instant action is "not an action based on that agreement" but rather is an action based on 35 U.S.C. § 297. (Pl.'s Br. at 7).

This Court disagrees with Plaintiffs' interpretation of the clause's language as "non-mandatory". The plain language makes it clear that "South Carolina . . . shall be the appropriate venue for any action." The use of the word "shall" indicates that the language is mandatory. See <u>Wall St. Aubrey Golf, LLC v. Aubrey</u>, 2006 U.S. App. LEXIS 13817 at *8 (3d Cir. 2006) (finding clause language that states "shall be construed in accordance with the laws of the Commonwealth of Pennsylvania, with venue laid in Butler County, Pennsylvania" as mandatory). Moreover, "any action" encompasses the instant dispute, which has come about because of the Agreement between the parties. See <u>MoneyGram</u>, 65 Fed. Appx. at 846 (finding that forum selection language saying "any unresolved dispute....arising out of" the Agreement applied to claims for fraud and conversion). Moreover, the mere pleading of non-contract actions does not render the forum selection clause inoperable. See <u>Crescent Int'l Inc., v. Avatar Communities, Inc</u>., 857 F.2d 943, 944 (3d Cir. 1988) ("pleading alternate non-contractual theories is not alone enough to avoid a forum selection clause of the claims asserted arise

out of the contractual relation and implicate the contract's terms.").

Morever, the term "any action" is also broad enough to encompass the alleged misrepresentations made prior to the execution of the Agreement.  See <u>Intn'l Business Software Solutions Inc., v. Sail Labs Tech.</u>, 440 F. Supp. 2d 357, 363-64 (D.N.J. 2006)(finding that forum selection clause applied because of its broad language despite arguments that misrepresentations were made before the agreement was executed).  Thus, the clause is both mandatory and broad enough to apply to the instant dispute.

Where a forum selection clause is valid, "the plaintiffs bear the burden of demonstrating why they should not be bound by their contractual choice of forum."  <u>Jumara v. State Farm Ins.</u>, 55 F.3d 873, 880 (3d Cir. 1995).  While the contractual forum choice is given considerable weight, however, the existence of such a clause is not dispositive and this Court must also consider several other factors in determining the appropriateness of a transfer pursuant to § 1404(a).  <u>Stewart Org., Inc., v. Richoh Corp</u>., 487 U.S. 22, 29-30 (1988).  These factors include matters of both private and public interests as delineated in <u>Jumara</u>.  The private factors include:

> 1) the Plaintiffs' forum preference; (2) the
> Defendant's forum preference; (3) the location where
> the events occurred and claims arose; (4) the
> convenience of the parties; (5) the convenience of the

11

> witnesses; and (6) the ease of access to sources of proof.

Select Medical Corp. v. Hardaway, 2006 U.S. Dist. LEXIS 15326 at *12 (E.D. Pa. Mar. 31, 2006)(citing Jumara, 55 F.3d at 879-80). The public interest factors to be considered include:

> (1) the relative congestion and burden of the courts in the two fora; (2) the relative ability of the two fora to resolve the case more expeditiously and inexpensively; (3) the interest of the community at-large, including the interest of a potential jury that would be required to resolve a case that has no relation to its community, and the interest of the communities in having controversies resolved where they arise; and (4) the familiarity of the court with the state law of a foreign state and appropriateness of trying a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court untangle problems in conflict of law, and in law foreign to itself.

Id.

With regard to the private interests, it is clear that Plaintiffs prefer New Jersey and Defendant, South Carolina. However the forum selection clause deems South Carolina the preferred forum. On the other hand, the fact that the alleged representations resulting in the Agreements took place in New Jersey weighs in Plaintiffs' favor. Each side contends that witnesses, proof and convenience dictates that the case be heard in their respective preferred forum. Defendant contends that South Carolina is more convenient because it is Advent's principal place of business and where most of its witnesses and documentation are located. Plaintiffs contend that transferring

12

the case to South Carolina would be unreasonably inconvenient because Plaintiffs' key witnesses and documents are in or near New Jersey and travel would be prohibitively expensive. For example, Plaintiffs assert that it will be too expensive for them to travel to South Carolina with their wives, who are "key" witnesses. (Pls.' Br at 14). However, "difficulties regarding production of non-party witnesses is insufficient under New Jersey law to invoke the exception." Magla Prods. v. Chambers, 2006 U.S. Dist. LEXIS 71246 at * 9 (D.N.J. Sept. 29, 2006). Moreover, "[m]ere inconvenience or additional expense is not the test for unreasonableness." Danka Funding, LLC v. Page Scrantom, Sprouse Trucker & Ford, P.C., 21 F. Supp. 2d 465, 471-72 (D.N.J. 1998) (internal quotations omitted). Other than additional costs and distance, Plaintiffs have offered no other reason preventing them from traveling to South Carolina and financial hardship alone is not enough. See id.

This Court is also wary of Plaintiffs' bare assertions that they could not afford an attorney in South Carolina and would simply have to drop the matter if it was transferred. Plaintiffs have not argued that an attorney in South Carolina would be more expensive than their current attorney. Indeed, at oral argument the Court pressed Plaintiffs' counsel to inform it whether the rates of a South Carolina lawyer would be higher, a fact the Court doubted. Plaintiffs' counsel admitted that he had no such

13

knowledge or basis to conclude it would be more expensive for Plaintiffs to litigate in South Carolina.  Moreover, if all a party had to do was threaten to drop a matter if it was transferred, the courts in this district would consistently have their hands tied where self-proclaimed unsophisticated plaintiffs, similar to those in this matter, simply threatened to drop their case without more support.  While both Plaintiffs in this case attest to the fact that they have minimal savings, they have not shown this Court that it would be unreasonably more expensive to litigate this matter in South Carolina.  See Mathews, 2006 U.S. Dist. LEXIS 8608 at * 20 (granting defendant's request to transfer venue despite plaintiff's arguments that the transfer would be too financially burdensome and deny him his day in court).[1]

With regard to the public factors, Plaintiffs have offered no evidence that the District of New Jersey is less congested or better equipped to handle this matter.  Plaintiffs do assert that enforcement of the forum clause would violate public policy because New Jersey is Plaintiffs' "home forum" and New Jersey has a "strong interest in protecting its citizens" and sending

---

[1] At oral argument, Plaintiffs' counsel offered to submit affidavits setting forth each Plaintiff's financial condition. The Declaration of Plaintiff Vernon Prioleau evidences minimal assets, e.g. $20,000 savings and other investments, as well as approximately $45,000 equity in his residence. Plaintiff Alfred Pappalardo, however, did not submit a Declaration.

Plaintiffs to South Carolina would "eliminate [Plaintiffs'] ability to enforce their rights and would be contrary to the spirit of the American Inventors Protection Act of 1999." Such contentions are completely unsupported; there is no indication whatsoever that the United States District Court for the District of South Carolina would be any less inclined to enforce the provisions of the American Inventors Protection Act of 1999 - <u>a federal law</u>.

In addition, Defendant counters by arguing that the public interest will be served by sending the case to South Carolina because it will assure enforcement of the judgment and because the Agreement provides that South Carolina law applies.

Because the forum selection clause is valid and South Carolina law applies, the courts of that forum are more familiar with the laws of that state than this Court; this public interest factor mitigates in favor of the requested transfer. <u>See</u> <u>Select Medical Corp</u>., 2006 U.S. Dist. LEXIS 15326 at * 19 (finding that where Pennsylvania law applied to case per forum clause, Pennsylvania courts were better equipped to apply their own law than Texas).

On balance, the existence of the valid forum selection clause, which receives substantial consideration, coupled with the above-listed factors ultimately mitigate in favor of transferring this matter to the District of South Carolina.

15

Finally, at oral argument Plaintiffs argued, for the first time, that this Court could not transfer this action to South Carolina because venue would not be proper under 28 U.S.C. § 1391. Plaintiffs argued that Section 1391 permits a transfer to a district only where the plaintiff had a right to bring the action originally; it cannot be to a district where the defendant consents to venue, absent satisfaction of the Section 1391 factors. Because this was an issue sprung upon the Court, the Court ordered supplemental briefing on the issue of whether or not the Plaintiffs could have brought this matter originally in South Carolina.

The parties agree, in their supplemental submissions, that the application of 28 U.S.C. § 1391(b)(2) governs this case. Section 1391(b)(2) provides that venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). This Court finds that Plaintiffs could have brought this case in South Carolina. South Carolina is where Advent has its principal place of business, is the location for the forum selection clause, where Goldstein directed all of his contacts to Advent, where Goldstein obtained all of his information from Advent for Plaintiffs' inventions to prepare the Legal Protection Reports, and where Goldstein sent the Legal Protection Report once he completed it. (See Supp. Thurlow Decl. ¶¶ 2-4; Goldstein Decl.

16

¶¶ 2-3).  Advent then combined Goldstein's Legal Protection Reports with the Marketing Reports to be sent directly from South Carolina to Plaintiffs' in New Jersey.  (Supp. Thurlow Decl. ¶¶ 4).  It is these Product Profile Reports that were sent directly to Plaintiffs in New Jersey.  It is also these Product Profile Reports which allegedly contained omissions of material facts which form the basis for each cause of action.  Therefore, venue in South Carolina is proper for all parties because acts performed in and through South Carolina constitute the basis for the alleged wrongdoing.

Although the Plaintiffs argue that the substantial part of the events in this case occurred in New Jersey, this argument, even if proven to be true, does not defeat venue in South Carolina.  Venue may still be proper in more than one district, provided that a "substantial part" of the events occurred in more than one district.  <u>Calkins v. Dollarland, Inc.</u>, 117 F. Supp. 2d 421, 426 (D.N.J. 2000) ("The fact that substantial activities took place in district B does not disqualify district A as proper venue as long as 'substantial' activities took place in A, too...even if it is shown that the activities in B were more substantial, or even the most substantial." (quoting David D. Siegel, Commentary on 1988 and 1990 Revisions of Section 1391, in 28 U.S.C.A. § 1391 (West 1993), at 9)).

17

In conclusion, a transfer to South Carolina is proper under 28 U.S.C. § 1391(b)(2).

Because this Court has decided to transfer the matter, Defendant's motions to dismiss are denied as moot.

An accompanying Order will issue this date.


Dated: April 30, 2007               s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    UNITED STATES DISTRICT JUDGE